UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN OLIN,

    Plaintiff,

v.                                          Case No.  6:12-cv-1455-Orl-28TBS

JERRY L. DEMINGS, in his official
capacity as ORANGE COUNTY SHERIFF;
and PATRICK SCALES, individually,

    Defendants.

## ORDER

This case comes before the Court without oral argument on Defendants' Motion to Strike Expert Testimony of Dr. Charles Lammers (Doc. 63) and Plaintiff's response (Doc. 68).  For the reasons that follow, the motion is due to be granted.

### Background

On December 16, 2008, Orange County Deputy Sheriff Patrick Scales handcuffed Plaintiff and ordered him to sit on the curb.  Plaintiff was detained for 20 to 30 minutes and then released without being charged with a crime.  As a consequence of this incident, he brings this action against the Sheriff and Deputy Scales for false imprisonment, violations of 42 U.S.C. § 1983, and battery.

In June, 2011, Plaintiff began seeing neuropsychologist Anthony LoGalbo. (Doc. 65-1, p. 7).  In September, 2011, Dr. LoGalbo referred Plaintiff to psychologist Charles Lammers for psychotherapy.  (Id., p. 4).  Dr. Lammers received his Ph.D. in clinical psychology from Washington State University in 1991.  He practiced psychology at the Northwest Occupational Medicine Center in Portland, Oregon

from 1991 through 1997.  From 1998 to the present, he has been employed as a psychologist by Medical Psychology Associates which is part of the Florida Hospital Medical Group.  (Doc. 68-1).

Dr. Lammers thinks of himself as a clinical psychologist practicing in the area of medical psychology.  (Doc. 65-1, pp. 7, 97).  Roughly three-quarters of his patients have psychological issues related to medical problems such as chronic pain.  (Id., p. 109).  Many of these patients suffer from anxiety, depression, or post-traumatic stress disorder.  (Id.).  The remainder of his patients come to him for treatment of depression, anxiety, panic attacks, post-traumatic stress disorder and other issues unrelated to medical problems.  (Id.).  Dr. Lammers describes the majority of his techniques as cognitive behavioral therapy.  (Id., p. 93).  He focuses on improving relaxation abilities, problem-solving abilities and communication techniques.  (Id.).  He also helps people look at the way they perceive and think about situations and to be as effective as possible.  (Id.).

Dr. Lammers saw Plaintiff approximately twelve times from September 2011 through October 2013.  (Doc. 64-1).  When Plaintiff first went to Dr. Lammers he was primarily concerned about migraines, the effects of toxic chemical exposure when he was a child, kidney problems and pain.  (Doc. 65-1, p. 40).  The psychotherapy sessions did not begin to focus on this lawsuit until after January 14, 2013.  (Id., p. 56).  Dr. Lammers did not perform any diagnostic testing of Plaintiff.  (Id., p. 9).  While Dr. LoGalbo did some neuropsychological testing, Dr. Lammers only relied on the test conclusions, not the tests themselves.  (Id., pp. 6-7).

Plaintiff has disclosed Dr. Lammers as an expert witness on the

psychological damages he allegedly suffered as a result of his encounter with Deputy Scales. Dr. Lammers has produced a 1 ½ page expert witness report in which he opines that Plaintiff "struggles with a great deal of anxiety, anger and some depression." (Doc. 64-1). He reports that "[s]ome, but not all of this appears related to the past event with the law enforcement officer." (Id.). Dr. Lammers is unable to "partition out how much of [Plaintiff's] present difficulties is related to that event versus other issues in his life." (Id.). Still, it is clear to him "that some of [Plaintiff's] ongoing dysphoria, anger and anxiety is connected to that event." (Id.).

Defendants have deposed Dr. Lammers and are now asking the Court to strike his testimony on the grounds that it is not scientifically reliable; his opinions improperly invade the province of the jury; and they are based on Plaintiff's self-serving statements, which Dr. Lammers assumed to be true.[1] (Doc. 63).

### Legal Standard

Federal Rule of Evidence 104 provides that the "court must decide any preliminary question about whether a witness is qualified ... or evidence is admissible." Federal Rule of Evidence 702 states that: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court found that the trial

---

[1] The Court does not need to reach this final ground to decide the motion.

judge has a special gatekeeping role under Rule 702 to ensure that scientific evidence is both reliable and relevant before it is admitted into evidence.  The Daubert test of reliability is flexible and the Court has broad latitude in deciding how to determine reliability and ultimately, whether an opinion is reliable.  Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-42, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

The Supreme Court has identified the following four non-exhaustive factors a court may consider when determining the reliability and admissibility of expert testimony: (1) whether the expert's methods or techniques can be or have been tested; (2) whether the technique, method, or theory has been subjected to peer review and publication; (3) whether the known or potential rate of error of the technique or theory when applied is acceptable; and (4) whether the technique, method, or theory has been generally accepted in the scientific community. Daubert, 509 U.S. at 593-95.  The Daubert court recognized that these factors are "a mere starting point for the court's analysis." Allison v. McGhan Medical Corp., 184 F.3d 1300, 1312 (11th Cir. 1999).  The 2000 Advisory Committee's Notes to Rule 702 suggest additional factors including whether the testimony concerns "matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying;" "[w]hether the expert has adequately accounted for obvious alternative explanations;" and [w]hether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting." FED.R.EVID. 702 Advisory Committee's Notes (2000 Amends.).

It is not the trial court's role to determine whether the expert witness' conclusions are correct. U.S. v. Bonds, 12 F.3d 540, 563 (6th Cir.1993). The trial court's responsibility in determining the reliability of expert witness testimony is limited to considering the witness' methodologies, not the conclusions the expert reached. Id. Any questions about the certainty of the scientific results is for the trier of fact to decide. Id. "[A] district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (citations omitted); Quiet Technology DC8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). It is also not the trial court's role to "transform a Daubert hearing into a trial on the merits." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 250 (5th Cir.2002). The court's sole purpose is to determine the reliability of a particular expert opinion through a preliminary assessment of the methodologies underlying the opinion. Daubert, 509 U.S. at 592-93.

"[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 147, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). The trial court may exclude evidence when it finds that "there is simply too great an analytical gap between the data and the opinion proffered." Id.

Expert testimony is admissible when the Court is satisfied that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable;

and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.  McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002); Maiz, 253 F.3d at 664.  The party offering the testimony has the burden of proving the evidence is reliable, not that it is scientifically correct.  Allison, 184 F.3d at 1312.  The proponent's burden is to prove the admissibility of the evidence by a preponderance of the evidence.  Hall v. United Ins. Co. Of America, 367 F.3d 1255, 1261 (11th Cir. 2004).

Analysis

Dr. Lammers is qualified by education and experience to opine in the field of clinical psychology.  But, his qualifications do not guaranty the reliability of his opinions in this case.  Quiet Technologies, 326 F.3d at 1341.  While he has provided a general description of his practice and methods, his report and deposition testimony do not reveal the specific theories, techniques, methodology, or reasoning he employed to arrive at the conclusions expressed in his expert report and deposition.  There is not evidence from which the Court can determine whether the methods the doctor used in treating Plaintiff have been tested; whether they are generally accepted in the clinical psychology community; or what the potential rate of error is.  Even if the Court assume that Dr. Lammers employed generally accepted techniques, there is no way of knowing if he used them properly or adequately in this case.  The doctor did not audio record his sessions with Plaintiff, he admits that his professional notes are incomplete, and he has agreed that unless another clinical psychologist had followed him around, there is no way

for another clinical psychologist to test his technique.  (Doc. 65-1, pp. 10, 15-17). While he reviewed Dr. LoGalbo's medical records, "the vast majority" of his opinions are based entirely upon his psychotherapy sessions with Plaintiff.  (Id., p. 17). Thus, Dr. Lammers' opinions are not supported by anything except his own testimony about what he did.  The Court cannot discern whether his methods and results are rooted in real science or whether they are substantively sound.  In other words, the Court is unable to examine the foundations of Dr. Lammers' opinions to ensure that they meet the standards for admissibility under Rule 702. U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir.2004).  In the absence of a reliable foundation, the Court finds that Dr. Lammers' testimony should be stricken. McClain v. Metabolife, 401 F.3d 1233, 1245 (11th Cir.2005); Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1344 (11th Cir.2003).

     In his expert witness report, Dr. Lammers relates that Plaintiff found his detention by Deputy Scales "quite distressing;" that Plaintiff attributes a significant amount of his current problems to this detention; that he is anxious about possible future contact with law enforcement; that he fears he may overreact if he encounters law enforcement in the future; and that he is pursuing this lawsuit as a matter of principal.  To the extent this information is admissible, it is factual and can be adduced without expert witness testimony.  Plaintiff is competent to testify about his subjective feelings, fears and motives and the trier of fact is equally competent to understand this information without the aid of an expert witness.  Accordingly, Defendant's motion to strike these "opinions" from Dr. Lammers' testimony will be granted.

For these reasons, Defendants' Motion to Strike Expert Testimony of Dr. Charles Lammers (Doc. 63) is GRANTED and his testimony and expert witness report are STRICKEN.

ORDERED in Chambers in Orlando, Florida, on January 13, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies to Counsel of Record