UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN OLIN,

      Plaintiff,

v.

      Case No: 6:12-cv-1455-Orl-28TBS

PATRICK SCALES and JERRY L. DEMINGS,

      Defendants.

## ORDER

Alleging federal constitutional claims pursuant to 42 U.S.C. § 1983 and state law claims of false imprisonment and battery, Plaintiff John Olin has sued Orange County Sheriff's Deputy Patrick Scales and Sheriff Jerry L. Demings. Mr. Olin alleges that his civil rights were violated when he was prosecuted for resisting a law enforcement officer without violence. He also alleges that Sheriff Demings failed to train his deputies and maintained a custom or policy of failing to protect citizens against malicious prosecution. Defendants have filed motions for summary judgment that are before the Court for consideration. Because arguable probable cause existed to support the charge of resisting arrest without violence, the motions for summary judgment must be granted. The state law claims will be remanded to the state court from which this case was removed.

I.    **Background**

On December 16, 2008, Shantee Davenport, a young mother, accidentally locked her eleven-month-old daughter in her car after doing laundry at a laundromat in the Central

Park Plaza shopping center in Orlando. (See Davenport Dep. at 9, 17-21).[1] After she finished her laundry and left the laundromat, she placed the baby in the car and turned on the engine and air conditioning because it was warm outside. (Davenport Dep. at 19; but see Castro Dep. at 33 ("It wasn't that hot.")). She then loaded her laundry in the vehicle, but when she tried to reenter her car, she realized that she had accidentally locked herself out of the car with the baby inside. (Davenport Dep. at 20-21). After trying to open each door, she obtained the help of Deputy Scales, who was at the shopping center on his lunch break. (Scales Aff. ¶¶ 6-7; see also Davenport Dep. at 21-22).

Deputy Scales accompanied Ms. Davenport to her car. (Scales Aff. ¶ 7; see also Davenport Dep. at 27). Upon confirming that the doors were locked and that the baby was in the car, Deputy Scales called the Orange County Sheriff's Office dispatch center, which then notified the fire department. (Scales Aff. ¶ 7). Within a few minutes, several firefighters in a fire engine came to assist Ms. Davenport. (Id. ¶¶ 7-8; Geering Dep. at 10). While some of the firefighters attempted to open Ms. Davenport's car, another firefighter called a locksmith. (See Geering Dep. at 22-23; Rodriguez Dep. at 12). The locksmith

---

[1] Citations to depositions are indicated by "[Last Name] Dep." The page numbers refer to the individual page of the deposition transcript, not the page of the document on the docket.
This Order refers to depositions of Plaintiff John Olin (Docs. 55-1 & 55-2); Defendant Deputy Patrick Scales (Doc. 72-5); firefighters James Geering (Doc. 58-1), Scott Dunn (Doc. 59-1), and Omar Rodriguez (Doc. 60-1); locksmith Eddie Castro (Doc. 56-1); Mr. Olin's co-workers Joe Pineiro (Doc. 57-1) and Noel Mary Kupiec (Doc. 72-8); and mother Shantee Davenport (Doc. 61-1). The Order also refers to affidavits or declarations of Mr. Olin (Doc. 72-1); Deputy Scales (Doc. 52-1); and Orange County Sheriff's Office Sergeant Sean McCormack (Doc. 53-1). Some of the documents titled "Affidavits" by the parties appear to instead be unsworn declarations that can nevertheless be considered by the Court. See 28 U.S.C. § 1746. For clarity's sake, they will be referred to in this Order by the name given to them by the parties.

2

arrived and parked directly behind the fire engine, and the two vehicles blocked several cars in the parking lot, (Scales Dep. at 32-33; Castro Dep. at 22), including Mr. Olin's car.

Mr. Olin, who was also visiting the shopping center on his lunch break, headed to his car after learning that the firefighters were assisting in freeing a child locked in a car. (Olin Dep. at 175-76). According to Mr. Olin, he asked two firefighters if he could move his car and they told him he could,[2] so he started backing out of the space but was soon blocked by the arrival of the locksmith's car. (Id. at 177-79). At that point, Mr. Olin blew his horn and yelled at the locksmith to let him out.[3] (Id. at 183-84). Mr. Olin asked the locksmith if he could move his car or if they could switch spots.[4] (Id. at 185; Castro Dep. at 25). When Mr. Olin began talking with the locksmith, Deputy Scales directed the locksmith to move toward Ms. Davenport's car and work on unlocking it. (Castro Dep. at 30).

Deputy Scales approached Mr. Olin, (Olin Dep. at 186), who was described as angry and agitated by many bystanders,[5] (see Pineiro Dep. at 20-21; Geering Dep. at 27-28;

---

[2] Mr. Olin was unable to state which firefighters he spoke to. (Olin Dep. at 177). Firefighters who were at the scene testified that it would have been dangerous for Mr. Olin to attempt to move his car because there were firefighters working nearby. (Geering Dep. at 27-29; Dunn Dep. at 30-31; Rodriguez Dep. at 21-23).

[3] Mr. Olin alleges that he only yelled to enable himself to be heard over the fire engine. (See Olin Dep. at 184-85).

[4] Witnesses report that Mr. Olin stated he was in a hurry, (Castro Dep. at 51; see also Dunn Dep. at 20), but Mr. Olin testified in his deposition that he was not in a hurry and that he was not worried about returning to work at any particular time. (Olin Dep. at 184 ("If I took a three-hour lunch, no one would even say a word probably.")).

[5] Mr. Olin maintains that he was not speaking angrily at this time. (Olin Dep. at 193, 196).

Rodriguez Dep. at 18; but see Davenport Dep. at 36 (describing Mr. Olin as "not angry violent, just kind of irritated")). According to one firefighter, Mr. Olin's aggressive behavior was not typical in this type of situation. (See Geering Dep. at 27-28). Mr. Olin's behavior was distracting to the firefighters, the locksmith, and Deputy Scales. (Geering Dep. at 28; Dunn Dep. at 24; Castro Dep. at 40). Deputy Scales and the firefighters were concerned that if Deputy Scales did not take control of the situation, Mr. Olin would attempt to move his vehicle and endanger the firefighters at the scene. (Scales Aff. ¶ 10; Geering Dep. at 29; Dunn Dep. at 24; Rodriguez Dep. at 29). After Deputy Scales approached Mr. Olin, Deputy Scales either asked or told Mr. Olin to wait for the situation to be resolved before attempting to leave. (Olin Dep. at 195; Scales Dep. at 38). Mr. Olin responded that he wanted to get back to work and stepped out of his vehicle. (Olin Dep. at 195-96). Deputy Scales told Mr. Olin that he needed to see his driver's license. (Olin Aff. ¶ 14; see also Scales Dep. at 42).

It is undisputed that Deputy Scales then handcuffed Mr. Olin.[6] (Olin Aff. ¶ 21; Scales Dep. at 45-46). Mr. Olin claims that this occurred as he was reaching for his wallet to get his driver's license[7] and that Deputy Scales "attacked" him. (Olin Dep. at 197). Mr. Olin

---

[6] The timing of the handcuffing is disputed, however. Mr. Olin attests in his affidavit that Deputy Scales "did not handcuff [him] until after the car containing the baby had been unlocked," (Olin Aff. ¶ 22), but in his deposition he testified that Deputy Scales handcuffed him before the baby was removed from the car, (Olin Dep. at 206). Deputy Scales gave contradictory testimony about this issue, (Scales Dep. at 102, 107-08), but he later concluded that he handcuffed Mr. Olin before the baby was released from the car, (id. at 107-108, 110-12). Mr. Olin does not argue that Deputy Scales handcuffed him after the emergency personnel had left.

[7] Deputy Scales maintains that Mr. Olin refused to give Deputy Scales his license. (Scales Dep. at 45).

4

asserts that Deputy Scales used force to handcuff him, including kicking his legs and shoving him onto the car. (Id. at 198-99).[8] Deputy Scales and observers maintain, however, that he used only minimal force. (See Scales Dep. at 46-47; Castro Dep. at 37-38; Geering Dep. at 36). Deputy Scales then led Mr. Olin to the curb and told him to sit on the sidewalk. (Olin Dep. at 200-01; see also Scales Dep. at 50). At this point, one of Mr. Olin's co-workers approached and tried to calm him down. (Kupiec Dep. at 68 ("I've never seen someone that upset.")).

After Ms. Davenport's car was unlocked, Deputy Scales released Mr. Olin from handcuffs. (Olin Dep. at 204). Mr. Olin estimates that he was handcuffed between twenty and thirty minutes. (Id.). Deputy Scales told Mr. Olin that he would not be brought to jail at that time but that the deputy was going to file charges against him. (Scales Dep. at 61; see also Olin Dep. at 213). Mr. Olin told Deputy Scales that he would sue him,[9] and Deputy Scales walked backed to his car and left the scene. (Scales Aff. ¶ 15). Deputy Scales obtained sworn statements from firefighters, who stated that Deputy Scales secured the scene in the best way he could and that his presence ensured the safety of those at the scene. (Dunn Statement, Doc. 52-1, at 16; Geering Statement, Doc. 52-1, at 18 ("If Deputy Scales had not intervened, I believe that [Mr. Olin] would have tried to drive through the scene.")).

---

[8] Mr. Olin states that "[Deputy Scales] grabbed me by my shoulder and wrist and slammed me onto the hood of the car, kicked my legs and told me to put my hands on the hood while he roughly pushed me down onto the hood and frisked me, again kicking my legs out from under me, and handcuffed me very, very roughly." (Olin Dep. at 198).

[9] The evidence submitted indicates that Mr. Olin accused Deputy Scales of stealing his cell phone at that time, (Olin Dep. at 207; McCormack Aff. ¶ 4), but Mr. Olin later found his cell phone in the driver's seat of his car, (Olin Dep. at 209-10; McCormack Aff. ¶ 4).

Deputy Scales completed an arrest affidavit, (Scales Dep. at 85; Arrest Aff., Doc. 72-7), and in February 2009 the state attorney charged Mr. Olin with resisting an officer without violence under section 843.02, Florida Statutes, (Pl.'s Resp. to Def. Scales's Req. Admiss., Doc. 62-1, at 4-5). The case against Mr. Olin was pending through May 2009 in state court, (id.), but was eventually dismissed, (Tr., Doc. 72-4, at 3; see also Tr., Doc. 72-3).

Mr. Olin then filed this lawsuit in state court against Deputy Scales and Sheriff Jerry L. Demings, alleging state law claims of false imprisonment (Count I) and battery (Count IV) against Deputy Scales and false imprisonment against Sheriff Demings (Count V). (Fourth Am. Compl., Doc. 47). Mr. Olin also alleged federal claims pursuant to 42 U.S.C. § 1983 for "violation of civil rights" against Sheriff Demings (Count II) and malicious prosecution against Deputy Scales (Count III). (Id.). The case was removed to this Court, and Deputy Scales and Sheriff Demings filed motions for summary judgment. (Docs. 50 & 51). Because there is no genuine dispute of material fact as to either of the federal claims, the motions for summary judgment must be granted as to Counts II and III, and the case will be remanded to the state court for resolution of the remaining claims.

## II. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). That burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

In ruling on a motion for summary judgment, a court construes the facts and all

6

reasonable inferences therefrom in the light most favorable to the nonmoving party, and it may not weigh evidence or determine credibility. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[D]iscredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as

7

the plaintiff has had a full opportunity to conduct discovery." Liberty Lobby, Inc., 477 U.S. at 256-57 (alteration in original) (quotation omitted).

### III. Malicious Prosecution Claim

Mr. Olin brings a federal malicious prosecution claim against Deputy Scales under 42 U.S.C. § 1983. (Doc. 47 at 11-13). Deputy Scales argues that the claim fails because he is entitled to qualified immunity and because Mr. Olin has failed to establish that Deputy Scales caused charges to be filed against him. (Doc. 51).

#### A. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity from suit is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'" Brown v. City of Huntsville, 608 F.3d 724, 733 (11th Cir. 2010) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

To establish eligibility for qualified immunity, "a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred." Hawthorne v. Sheriff of Broward Cnty., 212 F. App'x 943, 946 (11th Cir. 2007). Mr. Olin contends that Deputy Scales was not performing a discretionary function during the events at issue because he did not have probable cause to detain Mr. Olin, but this assertion is rejected. The discretionary function inquiry is focused on whether the acts in question "are of a type that fell within the employee's job responsibilities." Holloman ex

8

rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Courts must determine "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id. The Court must consider the general nature of the actions in question, temporarily disregarding an allegedly unconstitutional purpose. Id. at 1266; see also Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) ("'[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'"). Under this standard, performing an arrest, assisting with an emergency, and filing charges are within an official's discretionary duties. Deputy Scales was performing a discretionary function during the events at issue in this case.

Where, as here, the government official has demonstrated the performance of a discretionary function, the burden shifts to the plaintiff to demonstrate "that the official is not entitled to qualified immunity by showing (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time the violation occurred." Hawthorne, 212 F. App'x at 946 (quoting Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004)). These two factors can be considered by district courts in either order. Pearson, 555 U.S. at 236.

Malicious prosecution is "'a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983.'" Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003)). "To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth

9

Amendment right to be free from unreasonable seizures." Id. (emphasis omitted). The "elements of the common law tort of malicious prosecution are: '(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.'" Id. (quoting Wood, 323 F.3d at 882).[10]

"The existence of probable cause . . . constitutes an absolute bar" to federal malicious prosecution claims. Arrington v. Kinsey, 512 F. App'x 956, 958 (11th Cir. 2013). Dismissal of the charges by a court does not necessarily signify a lack of probable cause. Id. at 960. Moreover, "[t]o receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." Grider, 618 F.3d at 1257; see also id. at 1257 n.25. If an officer has arguable probable cause, his actions have not violated clearly established law, and the officer is entitled to qualified immunity. See Scarbrough v. Miles, 245 F.3d 1299, 1303 (11th Cir. 2001). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" Grider, 618 F.3d at 1257 (quoting Kingsland, 382 F.3d at 1232)). This standard is one of "[o]bjective legal reasonableness." Scarbrough, 245 F.3d at 1303 (alteration in original) (quotation omitted)).

---

[10] In some § 1983 malicious prosecution cases, the Eleventh Circuit has utilized the six elements of the Florida malicious prosecution cause of action to determine if the plaintiff has met the burden. See Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). More recently, however, the Eleventh Circuit has set forth the four elements listed in the text (which in essence are the same as Florida's elements) and has specifically noted that "'[w]hen malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law, but federal law, and does not differ depending on the tort law of a particular state.'" Grider, 618 F.3d at 1256 n.24 (quoting Wood, 323 F.3d at 882 n.17).

10

To determine whether there was arguable probable cause to charge Mr. Olin, the court must examine the alleged crime's elements and the facts of the case. Grider, 618 F.3d at 1257. Mr. Olin was charged with a violation of section 843.02, Florida Statutes, which states that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." To obtain a conviction under this statute, the state must prove that "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So. 3d 1181, 1185-86 (Fla. 2009).

Asking for assistance with an emergency is a clear legal duty of police officers. See, e.g., C.W. v. State, 76 So. 3d 1093, 1095 (Fla. 3d DCA 2011); Jay v. State, 731 So. 2d 774, 775 (Fla. 4th DCA 1999); see also Op. Att'y Gen. Fla. 89-62 (1989). Deputy Scales responded to the situation of a baby locked in a car by requesting assistance from dispatch and attempting to control the scene. The record evidence indicates that it is not uncommon for police officers, firefighters, and locksmiths to be called to such a scene. (Castro Dep. at 29-30; see also Dunn Dep. at 14; Rodriguez Dep. at 9). Deputy Scales's response and attempt to secure the scene was in the execution of a legal duty.

The next issue is whether arguable probable cause existed for Deputy Scales to believe that Mr. Olin was obstructing Deputy Scales's lawful duty. Florida cases interpret the obstruction requirement to generally require more than mere words. "'If a police officer is not engaged in executing process on a person, is not legally detaining that person, or has not asked the person for assistance with an ongoing emergency that presents a

serious threat of imminent harm to person or property, the person's words alone can rarely . . . rise to the level of obstruction.'" M.M. v. State, 51 So. 3d 614, 616 (Fla. 1st DCA 2011) (alteration in original) (quoting D.G. v. State, 661 So. 2d 75, 76 (Fla. 2d DCA 1995)). Similarly, "verbal interruptions and simple inquiries as to an officer's purpose cannot be construed as obstruction under Florida law." Petithomme v. Cnty. of Miami-Dade, 511 F. App'x 966, 971-72 (11th Cir. 2013). There are exceptions to this general rule when individuals seriously interfere with law enforcement officers' legal duties. See H.A.P. v. State, 834 So. 2d 237, 239 (Fla. 3d DCA 2002).

Mr. Olin's actions and words reasonably constituted obstruction. Whether this situation was "an ongoing emergency that present[ed] a serious threat of imminent harm to person or property" which would only require words to constitute obstruction is irrelevant because Mr. Olin's actions were not mere words. Even according to Mr. Olin, he started backing up his car at the scene with the fire engine nearby but had to stop when the locksmith's car parked behind the fire engine. He then asked the locksmith to move his car. Firefighters have testified that they were distracted by Mr. Olin's behavior and conversation with the locksmith, (Geering Dep. at 28, 39), and that they would have been in danger if Mr. Olin had attempted to back his car up, with or without the locksmith's car behind his, (id. at 28 ("I've worked three fire departments, at each three I've had a member of my department almost killed by a driver, so yes, no car should be driving when we are working."); Dunn Dep. at 31; Rodriguez Dep. at 21-23). Deputy Scales was also unable to attend to the scene of the emergency while he was talking to Mr. Olin. Mr. Olin's words and actions were a danger to the emergency responders at the scene and a distraction from their work. Reasonable officers in these circumstances would have believed that Mr.

12

Olin was obstructing the legal duty of Deputy Scales responding to an emergency situation and that thus there was probable cause to arrest and charge Mr. Olin.

In arguing against qualified immunity, Mr. Olin relies on the Eleventh Circuit cases of <u>Davis v. Williams</u> and <u>Petithomme v. Cnty. of Miami-Dade</u>, in which the officers were found not to have arguable probable cause for obstruction of a law enforcement officer under Florida law. These cases are distinguishable, however. In <u>Davis</u>, the plaintiff stayed a considerable distance away from the deputies when he was asking questions at a traffic stop near his house and thus did not physically interfere with them. 451 F.3d 759, 766 (11th Cir. 2006). <u>Petithomme</u> was based on similar reasoning: the officers had no arguable probable cause based only on the plaintiff's questions regarding the officer's purpose and the plaintiff's failure to produce requested identification quickly. 511 F. App'x at 972. In the present case, however, Mr. Olin attempted to drive his car at the scene while the rescue was underway, thus interfering with the situation. Mr. Olin's actions distinguish this case from both <u>Davis</u> and <u>Petithomme</u> and constitute a much greater interference than the plaintiffs' actions in either of those cases.

For these reasons, Deputy Scales had at least arguable probable cause to believe that Mr. Olin had committed the offense of resisting an officer without violence. Because he had arguable probable cause, there was no clearly established constitutional violation, and Deputy Scales is entitled to qualified immunity.[11]

---

[11] Deputy Scales further argues that even if he did not have arguable probable cause to charge Mr. Olin with violating § 843.02, he would have had arguable probable cause to charge him with violating a Florida statute that makes it illegal to "willfully or unreasonably interfere[] with, hinder[], or assault[] . . . any firefighter in the performance of his or her duty." § 806.10(2), Fla. Stat.; see <u>Bailey v. Bd. of Cnty. Comm'rs</u>, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest."). A conviction has been upheld under § 806.10(2)

Finally, Mr. Olin argues that Deputy Scales made false statements in the incident report, violating Mr. Olin's rights under the Fourth Amendment "because [the false statements] were necessary to a finding of probable cause for the crime of resisting an officer without violence." (Resp., Doc. 70 at 6). As shown above, however, even reading the facts in the light most favorable to Mr. Olin shows that Deputy Scales had arguable probable cause. Mr. Olin's difference of opinion with Deputy Scales's incident report is of no moment. Specifically, Mr. Olin puts forth an account of the event that lists several details that differ from the incident report: Mr. Olin alleges that he did not speak with Deputy Scales until Deputy Scales was next to Mr. Olin's car; Mr. Olin did not yell and was not irate until after he was in handcuffs; Deputy Scales did not handcuff Mr. Olin until after the car was unlocked[12]; and Mr. Olin did not refuse to show Deputy Scales his driver's license. (Doc. 70 at 5-6). Even acceptance of these facts as true, however, does not indicate that there was a lack of probable cause for Mr. Olin to be charged with resisting an officer without violence. Mr. Olin has not contested that he attempted to back out of a parking space when emergency personnel were near and that he wanted to continue to be able to do so. He

---

when an individual failed to move his car to allow firefighters access to a person who was having a seizure. Robinson v. State, 673 So. 2d 114, 115-16 (Fla. 4th DCA 1996). Reasonable officers could have believed that Mr. Olin's actions—moving his vehicle while firefighters were working very close to his car and then requesting that the locksmith leave so he could continue to do so—would unreasonably interfere with the firefighters' performance of their duties, which include protecting people. Thus, Deputy Scales also had arguable probable cause to handcuff Mr. Olin for a violation of § 806.10(2), and he would have had arguable probable cause to file charges with the state attorney's office for that offense.

[12] In this argument, Mr. Olin's counsel mischaracterizes the deposition testimony of Deputy Scales by stating that Deputy Scales testified that Mr. Olin was not handcuffed until after the car was unlocked. (Doc. 70 at 6; see also Scales Dep. at 101-02). In fact, Deputy Scales specifically retracted that statement a short time later on both cross-examination and redirect examination, which counsel neglected to inform the Court.

14

has not argued that he did not distract the emergency personnel from performing their duties. Reading the disputed issues of fact in the light most favorable to Mr. Olin, Deputy Scales still had arguable probable cause to file charges against him. Deputy Scales is thus entitled to qualified immunity.

### B. Causation

Deputy Scales also argues that even if he is not entitled to qualified immunity, Mr. Olin's malicious prosecution claim against him fails because Mr. Olin "cannot prove that Deputy Scales was the legal cause of the proceeding against him." (Doc. 51 at 18). Mr. Olin responds that the decision to prosecute was based on fabricated evidence and that therefore Deputy Scales can properly be considered the cause of the prosecution. (Doc. 70 at 8).

A prosecutor's charging decision generally breaks the chain of causation for a suit for malicious prosecution against a police officer. See Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11th Cir. 1994). If the decision to prosecute is based on fabricated evidence from an officer, however, the officer will be considered to be the legal cause of the prosecution. Howard v. Gee, 538 F. App'x 884, 889 (11th Cir. 2013).

Mr. Olin argues that Deputy Scales falsified information in the incident report and that this report was used as a basis to prosecute Mr. Olin. As noted above, however, even if the statements that Mr. Olin alleges were false were in fact fabricated by Deputy Scales, there was still arguable probable cause to charge Mr. Olin with that offense. Deputy Scales's motion for summary judgment must be granted with respect to Count III.

### IV. Section 1983 Claim Against Sheriff Demings

Mr. Olin brings a count of "violation of civil rights pursuant to 42 U.S.C. § 1983" against Sheriff Demings. (Doc. 47 ¶¶ 55-64). The basis for this count is not entirely clear,

15

but it appears to be rooted in the alleged malicious prosecution of Mr. Olin by Deputy Scales and accuses Sheriff Demings of having a custom or policy that did not protect citizens from malicious prosecution and of failing to train deputies "not to retaliate against citizens who complain against them." (Doc. 47 ¶¶ 61-62). Because there is no cognizable violation under § 1983 against Deputy Scales, this claim against Sheriff Demings must fail. Clark v. City of Atlanta, 544 F. App'x 848, 857 (11th Cir. 2013); City of L.A. v. Heller, 475 U.S. 796, 799 (1986); see also Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). Mr. Olin agrees with this legal principle. (Joint Pretrial Statement, Doc. 89, at 7). Accordingly, Sheriff Demings's motion for summary judgment must be granted with respect to Count II.

## V. Remaining State Law Claims

Mr. Olin also brings state law claims of false imprisonment against both defendants and a claim of battery against Deputy Scales. (Doc. 47). Because there are no federal claims remaining, this Court declines to exercise its supplemental jurisdiction over these claims. 28 U.S.C. § 1367(c)(3); see also Eubanks, 40 F.3d at 1162. These claims will be remanded to the state court.

## VI. Conclusion

As demonstrated above, there is no genuine dispute of material fact as to either of the federal counts in this case. Accordingly, it is **HEREBY ORDERED AND ADJUDGED** that:

1. Defendant Jerry Demings's motion for summary judgment (Doc. 50) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. The motion is granted as to Count II and is denied without prejudice as to Count V.

2. Defendant Patrick Scales's motion for summary judgment (Doc. 51) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. The motion is granted as to Count III and is denied without prejudice as to Counts I and IV.

3. Plaintiff's Motion to Strike Deposition Changes (Doc. 73) is **DENIED**.

4. The remaining counts (Counts I, IV, and V) are **REMANDED** to the Circuit Court, Ninth Judicial Circuit, in and for Orange County, Florida, Case No. 2012-CA-014443-0, *John Olin v. Jerry L. Demings et al.*

5. The Clerk of Court is directed to enter a judgment providing that Plaintiff John Olin takes nothing on the federal claims in Counts II and III of the Fourth Amended Complaint and that the state law claims have been remanded to state court. Thereafter, the Clerk is directed to close this file.

**DONE** and **ORDERED** in Orlando, Florida on April 22, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Clerk of the Circuit Court, Ninth Judicial Circuit in and for Orange County, Florida